UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CONNIE L. STEPHENSON,

    Plaintiff,                       CIVIL ACTION NO. 13-13803

  v.                           DISTRICT JUDGE GEORGE CARAM STEEH
                                MAGISTRATE JUDGE CHARLES E. BINDER
COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of sedentary work.

### II.    REPORT

#### A.  Introduction and Procedural History

Plaintiff filed an application for Social Security Disability Insurance Benefits on February 3, 2011, alleging that she had been disabled and unable to work since January 25, 2011, at age 48, due to bilateral knee pain, a history of carpal tunnel syndrome, obesity, and a history of heel spurs with plantar fascitis. Benefits were denied by the Social Security Administration (SSA). A requested de novo hearing was held on April 25, 2012, before

Administrative Law Judge (ALJ) Patricia McKay. The ALJ subsequently found that the claimant was not entitled to disability benefits because she retained the ability to perform a restricted range of sedentary work. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 49 years old at the time of the administrative hearing[1] (TR 41). She had been graduated from high school, and had been employed as a custodian for the Detroit Public schools (TR 42). Plaintiff stopped working in January 2011, as a result of severe bilateral knee and hand pain (TR 268). Claimant testified that she could sit for only 25 to 30 minutes before her legs began to bother her (TR 49). She frequently had to sit with her feet elevated in order to get any pain relief (TR 52-53, 67). Plaintiff explained that her hands often became numb and throbbed with pain. As a result, she had difficulty holding a telephone, reading a book and driving an automobile (TR 53-54). At the time of the hearing,

---

[1] Plaintiff argues that she should not have been considered a "younger person" (i.e., under 50 years old) when assessing her residual capacity. Since she attained the age of 50 just three months after the ALJ's decision, claimant asserts that the ALJ erred by not categorizing her as a "person closely approaching advance age." (See Plaintiff Brief in Support of Motion for Summary Judgment at pp 14-16). While claimant is correct that ALJs should not apply age categories mechanically, and should consider whether the use of an older age category would be appropriate in a borderline case, "nothing in [20 C.F.R. § 404.1563(b)] obligates an ALJ to address a claimant's borderline age situation in his opinion, or to explain his thought process in arriving at a particular age-category determination." Bowie v. Commissioner, 539 F.3d 395, 397 (6th Cir. 2008). Absent a showing of additional vocational adversities, (i.e. having only a marginal ability to communicate in English, or a history of work experience in an unskilled job in one isolated industry or work setting) ALJ's are instructed to use the claimant's chronological age. Bowie, 539 F.3d at 397-98. Plaintiff does not offer evidence of additional vocational adversities. The fact that claimant's prior work was unskilled, or that she did not graduate from college, are not vocational adversities.

claimant was unable to seek treatment for her pain since she did not have the money to cover her co-pays (TR 54).

A Vocational Expert, Scott Silver, classified Plaintiff's past custodial work as heavy, unskilled activity (TR 78-79). The witness testified that there would be no jobs that claimant could perform if her testimony were found to be fully credible[2] (TR 84). If she were capable of sedentary work, there were numerous surveillance monitor, order clerk and telephone information jobs that Plaintiff could perform with minimal vocational adjustment (TR 80). These jobs provided a sit-stand option, and did not expose workers to workplace hazards, dangerous moving machinery, unprotected heights or humid environments. There would only be an occasional need to do any climbing, kneeling, stooping, bending or crawling (TR 82).

**B.    ALJ's Findings**

The Administrative Law Judge found that Plaintiff was impaired primarily as a result of bilateral knee pain, a history of carpal tunnel syndrome, obesity and a history of heel spurs and plantar fascitis, but that her condition was not severe enough to meet the Listing of Impairments. The ALJ recognized that the claimant's impairments precluded her from performing jobs requiring the use of either power or vibrating tools. Nevertheless, the ALJ found that Plaintiff retained the residual functional capacity to perform a significant number of sedentary jobs, as identified by the Vocational Expert (TR 22-30).

---

[2]The witness explained that Plaintiff's alleged need to elevate her legs on a regular basis would preclude all work activity (TR 84).

### C. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc); Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### D. Discussion and Analysis

After review of the record, I suggest that substantial evidence exists on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of sedentary work that did not require the use of power or vibrating tools. The medical evidence, as a whole, fails to provide objective support for Plaintiff's allegations of severe and totally disabling pain.

The medical record contains little objective medical basis for crediting Plaintiff's complaints of disabling symptoms related to bilateral knee and hand pain. After undergoing successful arthroscopic surgery on her left knee in February 2010, Plaintiff enjoyed improved range of motion, strength and mobility following physical therapy (TR 268-271). The treating surgeon, Dr. Donald Garver, reported in April 2011, that the claimant's left knee had healed well, and that there was no evidence of swelling around the knee (TR 268). The doctor noted that Plaintiff wanted to return to work, but that Detroit public school administrators had denied a request to transfer her to a less stressful facility (TR 268). Dr. Garver also indicated that Plaintiff's arm and hand symptoms could be alleviated by wearing splints (TR 268).

In a residual functional capacity evaluation dated October 2011, Dr. Garver opined that the claimant could sit for an "unlimited" time, and would not require a sit/stand option. He believed she could stand for up to one hour at a time, and could walk for up to one hour total in a eight hour day (TR 292). While the treating doctor indicated that Plaintiff was unable to lift, push, pull or carry, he asserted that she remained capable of performing fine finger manipulations for an entire workday (TR 292-293).

Sedentary work is defined as the ability to lift no more than 10 pounds at a time, and to occasionally lift or carry articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carry out job duties. Jobs are considered sedentary if walking and standing are required occasionally and other sedentary criteria are met. See 20 C.F.R. 404.1567(a). Given the residual functional capacity evaluation of the treating surgeon, there is substantial evidence in the record supporting the ALJ's determination that Plaintiff could perform a significant number of sedentary jobs, as identified by the Vocational Expert. There is no medical support in record that Plaintiff needed to regularly sit with her left leg elevated above heart level.

Plaintiff relies heavily upon the fact that Dr. Garver altered his opinion a month later. In a letter dated November 2011, the doctor wrote that she was "no longer able to do her job as a custodian for the Detroit Board of Education". The doctor added that "she was no longer able to complete the job requirements asked of her in that position. We thus deem her unable to return to work and unemployable in that position . . . ." (TR 291). The ALJ agreed, in part[3], with Dr. Garver's subsequent conclusion that she could not perform her past work as a custodian, which she performed at the heavy exertional level (Tr. 28, 78). Based on the

---

[3]The ALJ reasonably explained why he gave little weight to another part of the same opinion that claimant was completely unable to lift, carry, push, or pull (TR 27-28,citing TR 292-93). As the ALJ explained, Dr. Garver's "extreme limitations" concerning her upper extremities were not supported by the objective evidence (TR 27-28). Indeed, there was only one mention of any complaints concerning claimant's arms or hands in Dr. Garver's treatment notes (TR 297). Without record support, Dr. Garver's entire opinion did not merit controlling weight or even significant weight. See 20 C.F.R. § 404.1527(c)(2); see also Warner v. Commissioner of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).

treating doctor's residual functional capacity evaluation of a month earlier, however, the ALJ determined that claimant could still perform a limited range of sedentary work identified by the Vocational Expert.

Given the lack of objective clinical evidence of disability during the relevant period, the Administrative Law Judge could reasonably find that Plaintiff's chronic pain symptoms did not prevent her from performing a reduced range of sedentary work. There is medical evidence on both sides and, having examined it, I cannot say that the Commissioner's conclusion was not supportable. In light of that evidence, the Commissioner could reasonably conclude that Plaintiff's subjective complaints of persistent, severe, totally disabling symptoms were not fully credible.

By establishing that she could not return to her past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that she had the vocational qualifications to perform alternative jobs in the economy, notwithstanding her various impairments. The Commissioner, however, met her burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's age, education, and vocational background, along with her significant impairments[4], the Vocational Expert testified that there were numerous

---

[4]The Administrative Law Judge's hypothetical questions to the Vocational Expert (VE) accurately described Plaintiff's moderate limitations caused by her leg and arm pain. Based on the claimant's residual capacity, including the limitation of changing positions as needed, the VE testified that the identified jobs would allow Plaintiff to alternate between sitting or standing in accordance with her testimony that she could sit for 25 to 30 minutes before needing to switch positions (TR 81-82). The ALJ further clarified that the minimal walking requirements (as she would be required to remain at her work station for most of the day) were such that any walking could be performed with a cane (Tr. 85-86). The ALJ was not required to include

7

surveillance monitor, order clerk and telephone information jobs that Plaintiff could perform with minimal vocational adjustment (TR 80). These jobs provided a sit-stand option, and did not expose workers to workplace hazards, dangerous moving machinery, unprotected heights or humid environments. There would only be an occasional need to do any climbing, kneeling, stooping, bending or crawling (TR 82). Given the objective clinical findings of the treating physician, this record contains substantial evidence that Plaintiff retained the residual functional capacity for a restricted range of sedentary work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to

---

additional limitations, such as Plaintiff's alleged need to elevate her legs, that he did not find to be credible. See Casey, 987 F.2d at 1235 ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact").

find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                s/ Charles E Binder
                                                               CHARLES E. BINDER
Dated: September 29, 2014                         United States Magistrate Judge